UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:23-cv-122-MOC

| MARLENE PEARSON, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) ORDER |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on the parties' opposing Motions for Summary Judgment. (Doc. Nos. 11, 12). Plaintiff brought this action for review of Defendant's final administrative decision denying Plaintiff's claim for disability benefits. Having carefully considered such motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.     Facts and Background**

On January 26, 2015, Plaintiff, filed a claim for disability insurance benefits under Title II and supplemental security income under Title XVI alleging disability since March 22, 2015, when she was 39 years old. (Tr. 228–30). Plaintiff's claims were denied initially and on reconsideration. (Tr. 104–71). Plaintiff requested a hearing with an ALJ. After a hearing, on August 29, 2017, an ALJ found Plaintiff was not disabled within the meaning of the Act. (Tr. 770). Plaintiff appealed that decision to this Court, and the government moved to vacate and remand the decision, which the Court did on February 23, 2020. (Tr. 804–05).

On November 9, 2020, the ALJ again denied the claim. (Tr. 812). On July 20, 2022, the Appeals Council vacated the ALJ's decision and remanded to a new ALJ for further proceedings. (Tr. 835–37). On December 12, 2022, ALJ Gentry Hogan presided over a hearing with Plaintiff. (Tr. 731–46). On January 10, 2023, ALJ Hogan denied Plaintiff's claim, issuing the final decision at issue in the appeal. (Tr. 710–21). Plaintiff now seeks review of that decision in this Court pursuant to 42 U.S.C. § 405(g).

## II. Factual Background

The Court adopts and incorporates the ALJ's findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the Court were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record

should include a discussion of which evidence the ALJ found credible and why,
and specific application of the pertinent legal requirements to the record evidence.
If the reviewing court has no way of evaluating the basis for the ALJ's decision,
then the proper course, except in rare circumstances, is to remand to the agency for
additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## IV. Discussion

### a. Substantial Evidence

#### i. Introduction

The Court has reviewed the transcript of Plaintiff's administrative hearing, the decision of the ALJ, and the relevant exhibits contained in the extensive administrative record. The issue is whether the decision of the ALJ is supported by substantial evidence, not whether the Court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials.

#### ii. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity ("SGA") will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix

1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)–(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

### b. The Administrative Decision

For the purposes of Titles II of the Act, "disability" means "the inability to do any substantial gainful activity (SGA) by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). The ALJ followed the five-step sequential evaluation in her analysis of Plaintiff's alleged disability. See 20 C.F.R. § 404.1520(a).

In particular, the ALJ found at step one of the sequential evaluation that Plaintiff had not engaged in substantial gainful activity after the alleged onset date, and at step two that Plaintiff had the following severe impairments: ulcerative colitis with colostomy, hearing impairment, and arthritis. (Tr. 713). The ALJ found at step three that none of Plaintiff's impairments, nor any

-4-

Case 1:23-cv-00122-MOC   Document 13   Filed 12/06/23   Page 4 of 11

combination thereof, met or medically equaled one of the conditions in the Listing of Impairments at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Tr. 714).

The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), with additional limitations:

> she can perform work with occasional use of ramps and stairs, no climbing of ladders, ropes, or scaffolds, occasional balancing, stooping, crawling and crouching, and frequent to all other postural limitations. She can have no concentrated exposure to occupational hazards such as unprotected heights and moving machinery, no working in louder or very loud work environments. She must have a sit/stand option, which is defined as an individual who can change positions from sitting to standing or reverse once every 30 minutes without going off task or leaving the workstation and could do this repeatedly.

(Tr. 715–19).

The ALJ found at step four that Plaintiff was unable to perform her past relevant work but found, at step five, that she could perform other jobs that existed in significant numbers in the national economy. (Tr. 719–20). Thus, the ALJ found that Plaintiff was not disabled within the meaning of the Act from March 22, 2015, through January 10, 2023. (Tr. 721).

### c. Plaintiff's Assignments of Error

Plaintiff raises one assignment of error: Plaintiff challenges the ALJ's finding that she was capable of handling a limited range of sedentary work with a sit-stand option—work which includes a "morning break, a lunch period, and an afternoon break at approximately 2-hour intervals," see Social Security Ruling (SSR) 96-9p, 1996 WL 374185 (July 2, 1996)—without the need for any additional "time off task" on a regular basis due to her use of a colostomy bag. (Tr. 715–19). For the following reasons, the Court finds that substantial evidence supports the ALJ's RFC finding.

The RFC assessment is a finding within the ALJ's exclusive jurisdiction as to the most a claimant can still do in a work setting despite his impairments. 20 C.F.R. §§ 404.1545(a)(1),

416.945(a)(1), 404.1546(c) 416.946(c); Felton-Miller v. Astrue, 459 F. App'x 226, 230 (4th Cir. 2011) (instructing that the RFC is "an administrative assessment made by the Commissioner"). The ALJ must include only a claimant's credibly established limitations only, not all limitations a claimant alleges. See 20 C.F.R. §§ 404.1529, 416.929 (discussing the factors relevant to assessing alleged limiting effects of impairments).

Assessing whether the alleged limiting effects of a claimant's symptoms can be credited is a two-step process. First, the claimant must provide objective medical evidence showing that a medical impairment exists, which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. 20 C.F.R. § 404.1529(b); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If the claimant meets this threshold obligation, the ALJ then considers the intensity and persistence of the claimant's pain or other symptoms, and the extent to which it affects his ability to work. 20 C.F.R. § 404.1529(c); Craig, 76 F.3d at 595. The regulation directs the ALJ to consider whether the objective medical evidence and other evidence is consistent with a claimant's statements regarding her ability to work. 20 C.F.R. § 404.1529(c).

As the Fourth Circuit has explained, reviewing courts should not apply categorical rules for what an ALJ must include within an RFC assessment; rather, "[t]he driving consideration is whether the ALJ's analysis allows for meaningful judicial review." Owens v. Kijakazi, No. 22-1273, 2023 WL 2344224, at *3 (4th Cir. Mar. 3, 2023); see also Shinaberry v. Saul, 952 F.3d 113, 121–22 (4th Cir. 2020) (rejecting a categorical rule specifically in the context of mental residual functional capacity assessments). Meaningful judicial review, in turn, does not require elaborate or detailed explanation. T-Mobile South, LLC v. City of Roswell, 135 S. Ct. 808, 815 (2015). It only requires that the agency's reasoning be "reasonably discernible." Garland v. Ming

Dai, 141 S. Ct. 1669, 1679 (2021). If the ALJ's rationale may reasonable be discerned, all that remains is applying the substantial evidence standard of review, see Ming Dai, 141 S. Ct. at 1679, which is deferential. See Biestek, 139 S. Ct. at 1154.

Plaintiff argues that the ALJ did not appropriately consider the extent to which she would need excessive breaks due to use of her colostomy bag when assessing her disability claim. The Court disagrees. The ALJ reasonably considered this issue and found that Plaintiff's colitis would not preclude her from handling a limited range of sedentary work with a sit-stand option, without the need for further limitations in terms of time off-task. (Tr. 715–19). To start, the ALJ complied with the Appeals Council's remand orders directing consideration of the effect Plaintiff's colostomy bag would have on her ability to work. (Pl.'s Br. 4; Tr. 808–09; see also Tr. 835–36). As the Appeals Council directed, the ALJ expressly considered Plaintiff's allegations that she "had a colostomy bag that she . . . had to check often [and] if she he had diarrhea[,] would fill up quickly." (Tr. 715, 808). However, the ALJ found this claim, along with others, to be "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 715–16). The ALJ then took into account at least three types of evidence that provide substantial support this finding—(1) Plaintiff's own reports about being able to work and remain active with her colostomy bag; (2) the lack of support in treatment records for finding Plaintiff unable to work using regular breaks due to her colostomy bag; and (3) Drs. Cox's and Vogelsang's findings. (Tr. 715–19).

First, the ALJ noted that Plaintiff continued to work and coach her son's baseball team for many years with her colostomy bag. (Tr. 716; see, e.g., 347–51). Indeed, the record shows that Plaintiff handled jobs that were far more physically taxing than the limited range of sedentary work the ALJ assessed in the RFC, all when using her colostomy bag. (Tr. 719; Tr.

60–63, 1001–02). Significantly, in her 2015 function reports, Plaintiff did not claim that her colostomy bag hindered her ability to work. (Tr. 304–05; see also Tr. 262–69). Consistent with this work history and these initial reports, Plaintiff's family and friends similarly focused on other issues, like pain and hearing loss, as the reason she stopped working. (Tr. 345–55).

Even Plaintiff's most recent testimony that she needed to use the restroom to check her colostomy bag seven times on a "normal" day (Tr. 733) does not support her claim that she would need "four additional breaks" during a workday. (Pl.'s Br. 11). As Defendant notes, for Plaintiff's argument to work, these restroom visits would need to be clustered entirely during the eight-hour workday, and not occur at any other times. However, nothing in the record suggests that this would be the case. Moreover, when extended out over an entire day, seven restroom trips would not be more than one visit every two hours, which aligns with "usual and customary breaks," (Tr. 744)—meaning, a "morning break, a lunch period, and an afternoon break at approximately 2-hour intervals," see SSR 96-9p, 1996 WL 374185 (July 2, 1996).

Second, the ALJ also considered Plaintiff's treatment history and explained that it did not show the pervasive diarrhea reported by her. Indeed, the ALJ a cited her very limited treatment for diarrhea, gastrointestinal symptoms, and dehydration in March 2016 and August 2020, noting that she had many normal exams throughout the record. (Tr. 716; see Tr. 379–80, 603, 615, 1116). The ALJ also discussed the fact that after Plaintiff's brief, rare episodes of diarrhea and dehydration, she quickly resolved and was stable. (Tr. 717, 1239–40). He further discussed the Plaintiff's hemorrhoids and rectal bleeding, which was described as "scant," and noted that she did well after her proctectomy in February 2022 to treat such symptoms. (Tr. 717, 1255, 1342, 1493, 1496).

While Plaintiff argues the evidence supports her alleged need for many unscheduled breaks per day due to using her colostomy bag, when viewed in the context of her eight-year period at issue in this case, the evidence falls short of showing that a "reasonable mind" could not discount this allegation. See Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Plaintiff alleged that she needed more restroom breaks when dealing with diarrhea, but she offered only two instances of treatment for acute diarrhea during the eight-year relevant period—March 2016 and August 2020. (Pl.'s Br. 9-10; see Tr. 1101, 1239, 1246). These notes only support the ALJ's determination—they show that Plaintiff sought treatment when diarrhea caused her to have to empty her colostomy bag as frequently as once an hour, (e.g., Tr. 1101, 1246–47), but that this was not a regular occurrence. Indeed, per Plaintiff's own report she could go years without having any issues—that is, she told Dr. Folkner that she "typically" went to the hospital for intravenous fluid when she gets sick with diarrhea because of her colostomy, but that she "ha[d]n't had an issue in 2 years." (Tr. 1239).

As for the treatment Plaintiff received in 2021 and 2022, this treatment related to hemorrhoids and proctitis. Although it required an additional surgery, Plaintiff did not report frequent bouts of diarrhea affecting the use of her colostomy bag. Indeed, these treatment records do not suggest that she had worsened in terms of the frequency with which she needed to check or empty her colostomy bag. To the contrary, the notes refer to her having "regular output from her ileostomy," (Tr. 1493), and that her output had "remained stable for many years." (Tr. 1496, 1502, 1505). Plaintiff did not testify to limitations due to her rectal issues at the hearing, and the post-surgical medical records show she reported she had been "doing well," "performing all ADLs and has good quality of life currently," and "her perineum has not been giving her any issues;" her only functional concern was being able to ride horses. (Tr. 1493, 1496, 1502, 1505).

-9-

Case 1:23-cv-00122-MOC   Document 13   Filed 12/06/23   Page 9 of 11

Third, the ALJ assessed that Drs. Cox and Vogelsang made findings consistent with the record, citing the "combined effect of taking several medications, visiting the doctor periodically, and reports of pain, despite consistently normal exams," (Tr. 717), and these experts notably did not suggest that Plaintiff's use of colostomy bag required more than the usual and customary breaks. (See Tr. 113 ("The claimant alleged . . . ulcerative colitis (with a colostomy bag) . . . [her] impairments do not exclude all work activities"), 147 ("ileostomy colostomy in place [with] fair control"). Additionally, and although Plaintiff suggests otherwise (Pl.'s Br. 6), neither did Dr. Wall. Dr. Wall checked that Plaintiff would need unscheduled breaks on a 2015 form, but nothing on the form suggests that the colostomy bag was the reason. (Tr. 558–60). While Dr. Wall later noted the bag as something that would "make it difficult for [Plaintiff] to sit for a long period of time," that does not establish that she would require a bathroom break more frequently than once every two hours. (Tr. 1219). Nothing here presents a reason to disturb the ALJ's assessment, where Plaintiff was allowed a sit-stand option, but not found to require more than usual and customary breaks (Tr. 715-19, 744)—which, again, means "a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals," see SSR 96-9p, 1996 WL 374185 (July 2, 1996).

Plaintiff's reliance on Dowling v. Comm'r of Soc. Sec., 986 F.3d 377 (4th Cir. 2021) and Bartley v. Kijakazi, No. 3:21-cv-401-GCM, 2022 WL 1416425, at *2-*3 (W.D.N.C. May 4, 2022) is misplaced. (Pl.'s Br. 6–7). Unlike the circumstances in Dowling and Bartley, the ALJ here made a reasonable finding about Plaintiff's alleged need to use the restroom—in short, after considering the relevant evidence, the ALJ found that "no time off task, due to colitis" was warranted. (Tr. 715–19). In applying the deferential substantial evidence standard of review, the Court "do[es] not undertake to re-weigh conflicting evidence, make credibility determinations, or

substitute [its] judgment for that of the [ALJ]." Johnson, 434 F.3d at 653 (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." Id. Therefore, the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence and Plaintiff has failed to show otherwise.

For all these reasons, the Court finds that the ALJ's decision is supported by substantial evidence, and the Court overrules Plaintiff's assignment of error.

### V. Conclusion

The Court has carefully reviewed the decision of the ALJ, the transcript of the proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignment of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson, 402 U.S. at 401, Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

(1) The decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment, (Doc. No. 11) is **DENIED**;

(3) The Commissioner's Motion for Summary Judgment, (Doc. No. 12) is **GRANTED**; and

(4) This action is **DISMISSED.**

Signed: December 6, 2023

Max O. Cogburn Jr.